STATE, Plaintiff-Respondent, v. PROBER,
Defendant-Appellant.†

Court of Appeals

*No. 77–609–CR. Submitted on briefs November 14, 1978.—
Decided December 27, 1978.*
(Also reported in 275 N.W.2d 123.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

424

426

For the defendant-appellant there were briefs by *William M. Coffey* and *Randall J. Sanfort* of *Coffey & Coffey*, of Milwaukee.

For the plaintiff-respondent, there were briefs by *David J. Becker,* assistant attorney general, and *Bronson C. La Follette,* attorney general.

Before Decker, C. J., Cannon, P. J., and Robert W. Hansen, Reserve Judge.

CANNON, P.J.  On January 27, 1976, the defendant, Allan Prober, was convicted of possessing heroin with intent to deliver, in violation of secs. 161.14(3) and 161.-41 (1m), Stats., after a trial to the court. He was sentenced to a one-year term in the county jail pursuant to sec. 973.09(4). The defendant appeals that conviction.

On August 20, 1974, the manager of the Inn America Motel entered room 52 of the motel in order to determine the reason the door could not be opened. Inside, he found the defendant lying on the floor, breathing heavily. The manager thought the defendant appeared to be in a semi-conscious condition. After observing in the room a brown leather purse, a spoon, and a plastic container with white powder in it, the manager called the police and requested an ambulance to remove an unconscious person from the motel.

Officer Szombathelyi was one of the two officers of a police ambulance team who arrived at the motel pursuant to the manager's request. The manager met the officers, and told Szombathelyi that a man who was not a registered guest had passed out in room 52. The manager testified at the preliminary hearing that he also told Officer Szombathelyi that he had seen the defendant leave the room after the ambulance was called, go downstairs, and put something into the trunk of his car. He then observed the defendant come back to room 52. After hearing the police ambulance siren, the defendant left the motel, and proceeded to walk down the street.

Szombathelyi and his partner pursued the defendant, and apprehended him approximately a half block from the motel. They arrested him for trespassing. At the

suppression hearing, Szombathelyi testified that at the time of arrest, the defendant had bloodshot eyes, slurred speech, was drooling from the mouth and had "messed up" clothes. The defendant appeared to be at times incoherent, and at other times, alert. He had a two-inch tie-off mark on his left arm, and he also had fresh needle marks on the inside of his arm where blood had trickled down. Officer Szombathelyi described the defendant as agitated, and testified that the defendant several times stated he wanted to die.

Szombathelyi took the defendant back to the motel room. The motel manager told the officer that he wanted the defendant's car removed from the motel parking lot, because the defendant had been arrested. Szombathelyi called a tow truck, and also called in a request to the Milwaukee Police Department Vice Squad for assistance. Szombathelyi then went downstairs, ostensibly to conduct an inventory of the items in the auto.[1]

Szombathelyi proceeded to look inside the car and open the car doors. He then opened the trunk of the car with the defendant's keys and found numerous syringes, an empty container of syringes, a plastic heat sealing machine, and a brown purse. He picked up the brown purse. His testimony at the various proceedings and at trial is conflicting regarding whether the purse was closed and he opened it, or whether the purse was open and its contents fell out by themselves when he picked it up. We assume, *arguendo,* that the purse was closed and Officer Szombathelyi opened it. Inside the purse was found 62 grams of heroin which was 72.8% pure by weight. An expert testified that the heroin had a street value of $25,000 to $60,000.

---

[1] Szombathelyi testified that the defendant voluntarily gave him the keys to the car after the officer requested he do so: the defendant testified he "thought" the keys were "taken" from him during a search after his arrest. For purposes of this opinion, we do not find it necessary to make a factual determination of how the officers obtained the keys.

At trial the defendant acknowledged that he possessed the heroin. However, he claimed that he had gone to the Inn America Motel in order to commit suicide by taking an overdose of heroin. He further contended that he wanted to commit suicide because his father had died one year previously and he was depressed. He stated that he injected an entire spoon of heroin that day in order to kill himself, and that he was unconscious from about six to seven hours before he was awakened by the motel manager entering the room. He admitted being a heroin addict, and having undergone treatment for heroin addiction. However, he denied any intent to deliver the heroin. He denied he ever sold heroin, and insisted that the drugs and the drug paraphernalia were for his personal use.

Before trial, the defendant moved to suppress the contents of the purse, contending that the search was an unconstitutional inventory search. The judge denied that motion, finding that the search was constitutional both as an inventory search and as a probable cause search.[2]

Four issues are raised on appeal:

1. Did the trial court err by denying defendant's motion to suppress the contents of the purse?

2. Was sufficient evidence adduced at trial to prove the defendant guilty beyond a reasonable doubt of possessing heroin with intent to deliver?

---

[2] "The court also believes that under the circumstances in which the Officer found the defendant, and the information which he had in his possession from the manager of the motel concerning the defendant's going to the automobile with a purse, that the Officer had reason to believe that a crime had just recently been committed and that the paraphernalia and evidence of that crime was in the trunk of the automobile, which was going to be towed away; and therefore, had probable cause to go into the automobile to determine what was in the trunk of the automobile. Therefore, on that basis, and for those reasons stated, the motion to suppress is denied."

3. Should the defendant be granted a new trial because the record on appeal contains no transcript of the argument and decision on the second motion to suppress made during the trial?

4. Should a new trial be granted in the interest of justice?

Each issue will be considered individually.

## SEARCH

In his decision ruling the automobile and purse searches constitutional, the judge who conducted the suppression hearing found it was proper both as an inventory search and as a probable cause search. We hold that the trial judge's decision regarding the probable cause search was correct.[3]

The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, homes, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The provisions of the fourth amendment are applicable to the states through the due process clause of the fourteenth amendment of the United States Constitution. *Mapp v. Ohio,* 367 U.S. 643 (1961).

The ultimate standard enunciated in the fourth amendment is reasonableness. *Cady v. Dombrowski,* 413 U.S. 433, 439 (1973). The reasonableness of a search is generally a substantive determination made by a trial

---

[3] Since we find the search was constitutionally permissible as a probable cause search, we need not and do not decide whether the search was constitutionally permissible as an inventory search.

court after considering all the facts and circumstances of the case before it. *Ker v. California,* 374 U.S. 23, 33 (1963). The trial court's findings will not be reversed unless they are against the great weight and clear preponderance of the evidence. *State v. Carter,* 33 Wis.2d 80, 90–91, 146 N.W.2d 466 (1966).

In most instances, searches by law enforcement units should be conducted only pursuant to a search warrant. *Ford v. Breier,* 383 F. Supp. 505 (E.D. Wis. 1974). In order for a warrantless search to be constitutionally permissible, there must be a showing that probable cause plus certain exigent circumstances existed which made it imperative that a warrantless search be conducted. *Dombrowski v. Cady,* 471 F.2d 280 (7th Cir. 1972), reversed on other grounds in 413 U.S. 433 (1973). The constitutional validity of a warrantless search is presumably the sort of question which can only be decided by examining the concrete factual context of the individual case. We, therefore, turn to the events of the afternoon of August 20, 1974.

The policeman who conducted the search on that date knew that the defendant had recently been found unconscious in a motel room where he was not registered.[4] He had been told by the manager of the motel that the defendant had taken something from room 52 to the trunk of his car before the police arrived. Upon observing the defendant, the policeman noted that he was talking in an agitated tone, his eyes were bloodshot, his speech was slurred, and he was drooling. He also noticed a tie-mark on the upper part of the defendant's arm, a needle mark and a trickle of blood coming from the defendant's arm. A reasonable man in those circumstances would conclude that the defendant had recently

---

[4] The defendant was later found to have been registered in room 61, not 52. No explanation of how the defendant got into room 52 appears in the record.

injected himself with some sort of drug. The suppression hearing judge found, and under these circumstances we agree, that the police had probable cause to open the car trunk. [We will discuss the opening of the purse subsequently.]

We also agree with the trial court that sufficient exigent circumstances existed to open the car trunk. The Wisconsin Supreme Court recently noted in *Thompson v. State,* 83 Wis.2d 134, 142, 265 N.W.2d 467 (1978) that, "it is apparent from the recent decisions of the United States Supreme Court that the exigency requirement of the automobile exception [to requiring a warrant for police searches] has been weakened and that only a slight showing will suffice." Exigent circumstances to conduct an automobile search have frequently been found to be that the car is mobile, *Cady v. Dombrowski,* 413 U.S. 433, 440–41 (1973), and because citizens have a diminished expectation of privacy in an automobile due to the fact that "its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis,* 417 U.S. 583, 590 (1974). Since this auto was parked in a public place and under the circumstances was only partially under control by the police, we conclude that a sufficient exigency existed for the officers to conduct a probable cause search of the defendant's vehicle without a warrant.

The opening of the purse presents a different problem. As the United States Supreme Court stated, "unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an

automobile." *United States v. Chadwick,* 433 U.S. 1, 13 (1977).

Just as we held there was probable cause to search the automobile, the same facts and considerations are sufficient for us to hold there was probable cause to search the purse. Under the circumstances a reasonable man would believe that the purse contained evidence of whatever the defendant injected himself with.

Although, as we have noted, a very slight showing of exigency is sufficient for police to conduct a warrantless automobile search, it is clear from *Chadwick* that a substantial exigent circumstance must exist in order for the police to conduct a warrantless search of a closed bag. We see no distinction between locked footlockers or a closed purse in this regard.

However, we do believe that a medical exigency existed in this case. Black's Law Dictionary defines exigency as "imperativeness" or "emergency," "any event . . . calling for immediate actions or remedy; a pressing necessity; . . ." The police officers in this case were called to transport an unconscious person from a motel room. The police officer found the appellant wandering away from the motel, and arrested him. Upon arresting him, the police officer noted that the defendant was in poor physical condition, including bloodshot eyes, slurred speech and drooling from the mouth. He noticed the tie-off mark and the needle mark on the individual's arm. The defendant was stating that he wanted to die. During questioning, he requested that the police shoot him. The officer knew the defendant had earlier taken something out to the trunk of his car. Under these circumstances, a reasonable man could believe that the defend-

ant had overdosed on a drug, and might be in danger of losing his life.

A police officer, especially one performing ambulance duty who would have a deep concern for emergency medical situations, has a responsibility to protect the public welfare as best he sees fit. He should not be restrained in a warrantless search if he believes, based upon reasonable considerations, that the search may reveal information which might help to save a citizen's life. The officer was reasonably alerted as a result of observing the defendant, that a very real possibility existed that the purse in question might have contained ingredients, which if obtained by the officer, could aid in stopping further deterioration of the defendant's mental and physical well-being.

It should be noted in this regard that Officer Szombathelyi called members of the Narcotics Squad to come to the motel. Under questioning, he claimed he did this because he did not know whether he should take the defendant to the jail or to the hospital. In light of these circumstances, the police officer had a right to open the purse in order to determine whether the defendant had injected something potentially fatal into his body. Without such information, the police officer would not be in the best position to protect the welfare of the defendant. We hold that probable cause, and a substantial exigency, a medical emergency, existed to insure the search was constitutionally permissible.[5]

---

[5] Officer Szombathelyi testified he entered the car in order to conduct an inventory search. The fact that he did not conduct the search because he thought a medical emergency existed is not fatal. The United States Supreme Court recently wrote:

Although we have not examined this exact question at great length in any of our prior opinions, almost without exception in evaluating alleged violations of the Fourth Amendment the Court

## SUFFICIENCY OF THE
## EVIDENCE

The defendant next argues that the evidence was insufficient to support his conviction for possession of heroin with intent to deliver. He admits that he possessed the heroin, needles, bags and the heat sealing machine, but he claims that he possessed them only for his personal use. Section 161.41(1m), Stats., under which the defendant was convicted, makes it a felony for one to possess heroin with intent to deliver. That section provides:

Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation.

"This section expressly provides that the intent necessary to sustain a conviction [under sec. 161.41(1m)] may be demonstrated by circumstantial evidence." *Peasley v. State,* 83 Wis.2d 224, 229, 265 N.W.2d 506 (1978). This is necessary because "intent is by its very nature rarely susceptible to proof by direct evidence." *Clark v. State,* 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974). In this case, the defendant possessed 62 grams of heroin, that was 72.8% pure by weight, and which was esti-

---

has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him.

. . . .

[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's actions does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. *Scott v. United States,* 436 U.S. 128, 137–38 (1978).

mated to be worth between $25,000 and $60,000 on the street. He possessed at least 20 syringes, numerous baggies, and a heat sealing machine by which the plastic baggies could be closed. Under these circumstances we believe the trial judge had sufficient basis to find the defendant guilty as charged.

The defendant also contends that since he claimed at trial he was attempting to commit suicide, he could not have had the "intent to deliver" at the time of his arrest. We are cognizant of this argument, but its validity was weighed and rejected by the trial court. In determining whether the evidence presented at trial was sufficient to sustain a conviction, it has been noted that:

> The test is not whether [an appellate] court or any of the members thereof are convinced [of a defendant's guilt] beyond a reasonable doubt, but whether this court can conclude that the trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence it had a right to believe and accept as true. The credibility of the witnesses and the weight of the evidence is for the trier of fact. *Peasley, supra* at 234.

After examining the record thoroughly, we are convinced that the trial court could be reasonably convinced beyond a reasonable doubt that the defendant possessed heroin with intent to deliver.

## MISSING TRANSCRIPT

A suppression hearing was held October 7, 1975, at which time testimony and arguments were heard. The actual trial was later held before a different judge, who again heard arguments concerning whether the evidence seized in the defendant's automobile should be admitted. After this hearing, the trial judge denied the second motion to suppress. Unfortunately, the proceed-

ings on the second motion during trial were not transcribed. It is not clear whether they were not recorded, or recorded but lost. In any case, the defendant claims that without a transcribed record of the second hearing regarding the recorded motion to suppress, he cannot fairly and adequately present his appeal. Because of this, he concludes that his due process and equal protection rights were violated.

No amendments were filed by the defendant in respect to the transcript in dispute before it was approved for transfer to the appellate court. In fact, the record discloses the defendant signed a stipulation approving the transcript. Section 817.117, Stats. provides:

> If no proposed amendments are served within 20 days after service of the transcript [on adverse parties], the transcript shall be deemed approved. . . .

The Wisconsin Supreme Court held on a similar question, pursuant to 274.117, Stats., the precursor of 817.-117, Stats.:

> [A] defendant cannot claim a right to a new trial . . . based on inadequacy of the transcript, when he has not exhausted the steps available to him and required of him by sec. 274.117. It is incumbent upon such defendant to follow and comply with the provisions of sec. 274.117, as to the correcting of defects and the securing of a record adequate for appellate review of alleged trial court error. . . . The defendant [is] required to request the trial judge to correct defects in the record before he can contend that such defects prevent him from obtaining an adequate appeal. *Peterson v. State,* 73 Wis.2d 417, 424, 243 N.W.2d 491 (1976).

In another case, the court stated:

> There is a further complaint that a proper transcript was not prepared. We can only say that defendant's counsel was apparently satisfied with it since he signed the

stipulation settling the bill of exceptions. *State v. Perlin,* 268 Wis. 529, 537, 68 N.W.2d 32 (1955).

We hold the defendant's objection to the record is untimely, and waived by his failure to amend the record as required by sec. 817.117, Stats. The defendant's argument that his due process and equal protection rights were violated is also waived by such failure to properly amend the transcript.

## INTEREST OF JUSTICE

Defendant finally contends he is entitled to a new trial in the interest of justice. Section 751.06, Stats. provides in part that a judgment or order can be reversed or a new trial may be granted "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, . . . ." In *Lock v. State,* 31 Wis.2d 110, 118, 142 N.W. 2d 183 (1966), the Supreme Court stated:

In order for this court to exercise its discretion . . . we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.

We are not convinced that either requirement exists in this case. *See Kohlhoff v. State,* 85 Wis.2d 148, 161, 270 N.W.2d 63 (1978). We decline to grant a new trial on this ground.

*By the Court.*—Affirmed.