STATE OF Wisconsin, Plaintiff-Respondent,

v.

Allan PROBER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 77–609–CR. Argued April 1, 1980.—*
*Decided September 30, 1980.*

(Also reported in 297 N.W.2d 1.)

For the appellant-petitioner there were briefs by *William M. Coffey, Randall J. Sandfort* and *Coffey & Coffey* of Milwaukee, and oral argument by *William M. Coffey.*

For the respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   We granted review in this case to determine whether the warrantless search of an automobile and the seizure of evidence found therein were constitutionally permissible.

## I.

On August 20, 1974, petitioner Allan Prober (defendant) registered as a guest in the Inn America Motel in Milwaukee.  He received a key and went to room 52, the room designated by the number on the key, carrying with him a purse containing heroin and syringes.  (Apparently the defendant was given the wrong key, for he was later found to be registered in room 61.)  Once inside the room, the defendant injected himself with heroin,

purportedly in an attempt to commit suicide, and became unconscious. Two guests, properly registered to room 52, went to that room and found the door locked. They summoned the manager who opened the door to the room and discovered the unconscious or semiconscious defendant lying on the bathroom floor. The manager further observed a spoon and a plastic container with white powder in it. The manager left the room and summoned a police ambulance. Awakened by the manager's entrance and movement in the room, the defendant regained consciousness. He then returned the heroin and syringes to the purse. He left the room, went to his car, placed the purse in the trunk of the car and reentered the motel. The defendant testified he heard the sirens of the approaching ambulance and left the motel.

Upon his arrival, Officer Szombathelyi, the ambulance driver, was told by the motel manager why the ambulance had been called. As this was being related, the officer and the manager observed the defendant leaving through the hall, down the steps, and away from the motel. The manager told the officer that the defendant had been in a room for which he was not registered. Officer Szombathelyi and his partner pursued the defendant and arrested him, approximately a half block away from the motel, for trespassing in the motel. The officers took the defendant back to room 52 to determine "if there was any damage done to the room or to see if there was any reason why he was in there."

Officer Szombathelyi testified the defendant had bloodshot eyes and slurred speech, and he was drooling from the mouth and wearing "mussed" clothes. The defendant appeared to be at times incoherent and, at other times, alert. He had a two-inch tie-off mark on his left arm and a fresh needle mark on the inside of his arm where blood had trickled down. Szombathelyi testified he then suspected a narcotics violation. He described the defendant as agitated, and testified the defendant several times stated he wanted to die.

Because the defendant was believed to be a trespasser, the motel manager requested his car be removed from the motel parking lot. Using the phone in room 52, Officer Szombathelyi summoned a tow truck. He also called in a request to the Milwaukee Police Department Vice Squad for assistance. The motel manager, who had accompanied the defendant and the officer back to room 52, told Szombathelyi he had seen the defendant place a purse in the trunk of an automobile. Officer Szombathelyi then went downstairs, ostensibly to conduct an inventory search of the defendant's car. At the suppression hearing Szombathelyi testified that the search was conducted to protect the defendant's property against loss in accordance with department regulations which required police to inventory any valuables found in a suspect's car when the suspect was taken into custody. Szombathelyi agreed that his "sole purpose in going through the trunk of that automobile was to inventory its contents."

Officer Szombathelyi testified the defendant handed him the keys to the car after the officer requested the defendant do so.[1] Szombathelyi proceeded to look inside

---

[1] The court of appeals noted, "the defendant testified he 'thought' the keys were 'taken' from him during a search after his arrest." *State v. Prober*, 87 Wis.2d 423, 430 n. 1, 275 N.W.2d 123 (Ct. App. 1978). The suppression court found that "[t]he Officer asked Mr. Prober for the keys to his, to the trunk, telling him that since he was going to be taken in the ambulance that the car was going to be towed." Whether or not the defendant's surrender of the keys constitutes a "clear and unequivocal" expression of consent to a search of the car, *State v. Hoyt*, 21 Wis. 2d 310, 317v, 124 N.W.2d 47 (1963), it is unclear whether the consent can be construed as extending to the purse found within the trunk. *Compare: State v. Drake*, 343 So.2d 1336 (Fla. App. 1977), *with People v. Sanders*, 44 Ill. App.3d 510, 358 N.E.2d 375 (1976). In its brief the state abandons its earlier reliance on a theory of consent, and like the suppression court and the court of appeals, we do not consider whether the search of the purse can be justified on a consent theory.

the car and open the car doors, searching the car interior. He then opened the trunk of the car with the defendant's keys and found syringes, a plastic sealer, and a purse. Officer Szombathelyi picked up the purse. He testified at the suppression hearing that the top of the purse flipped open and its contents fell out by themselves when he picked it up. At that time defense counsel sought to impeach Szombathelyi with the officer's previous testimony, given at the preliminary hearing, that the purse was closed and he opened it. Inside the purse were several syringes, two spoons, and a plastic bag containing white powder. The white powder was subsequently determined to contain 62 grams of heroin which was 72.8 percent pure by weight. An expert testified at trial that the heroin had a street value of $25,000 to $60,000.

Before trial, the defendant moved to suppress the contents of the purse, contending that (1) the search of the car and the purse was not conducted pursuant to the mandate of a search warrant; (2) the search, if incident to a valid arrest, exceeded its permissible scope; and (3) the defendant did not consent to the search. The circuit court denied that motion, finding that the search was constitutional as an inventory search and as a probable cause search. The court made no findings as to whether Officer Szombathelyi opened the purse to search inside it or whether the purse fell open. The circuit judge stated: "In this case the purse was not locked. It was merely snapped. . . . Whether the contents fell out of the bag, or whether the officer opened the bag, in this court's view . . . are immaterial." The evidence was admitted in a trial to the court, and the defendant was convicted of possessing heroin with intent to deliver, in violation of secs. 161.14(3) and 161.41(1m), Stats. 1973.

The court of appeals, after assuming "that the purse was closed and Officer Szombathelyi opened it," affirmed the denial of the defendant's motion to suppress.

*State v. Prober,* 87 Wis.2d 423, 430, 275 N.W.2d 123 (Ct. App. 1978). It agreed with the circuit court that the search of the vehicle was constitutionally permissible as a probable cause search. Accordingly, it declined to consider whether the search could be upheld as an inventory search. *Id.* at 432 n. 3. With regard to the search of the defendant's car, the appellate court concluded that because "this auto was parked in a public place and under the circumstances was only partially under control by the police, . . . a sufficient exigency existed for the officers to conduct a probable cause search of the defendant's vehicle without a warrant." *Id.* at 434. It further concluded that, although there was probable cause to search the purse, there was an insufficient showing of exigency to justify a warrantless search of the purse. *Id.* at 435. But the warrantless search of the purse was upheld under the emergency exception on the ground that "a reasonable man *could believe* that the defendant had overdosed on a drug, and might be in danger of losing his life." (Emphasis added.) *Id.* at 435–36. That Officer Szombathelyi did not conduct the search because he thought a medical emergency existed was not considered fatal. Quoting *Scott v. United States,* 436 U.S. 128, 138 (1978), the court of appeals stated: "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *State v. Prober, supra* at 436 n. 5. The court of appeals then affirmed the judgment of conviction. On May 9, 1979, we granted the defendant's petition for review, but review was limited to questions regarding the validity of the search of defendant's car and the purse found therein.

## II.

The Fourth Amendment to the United States Constitution[2] provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Art. I, sec. 11, of the Wisconsin Constitution is substantially the same. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). These exceptions are "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 499 (1958). We must determine whether any of the several exceptions to the warrant requirement justify the warrantless search of the defendant's car and the purse. While we conclude the search of the car, including the trunk, was proper, we conclude that none of the exceptions justifies a search of the purse.

### A.

Officer Szombathelyi testified that the search was conducted as an inventory search. We have recognized "the right of the police to conduct an inventory search of an impounded vehicle to protect themselves against false claims of loss of property while the vehicle is in police custody." *State v. McDougal,* 68 Wis.2d 399, 413, 228 N.W.2d 671 (1975). The United States Supreme Court,

---

[2] The provisions of the Fourth Amendment are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

in *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), upheld an inventory search of the unlocked glove compartment of a locked vehicle, stating

"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, . . . ; the protection of the police against claims or disputes over lost or stolen property, . . . ; and the protection of the police from potential danger."

However, as we pointed out in *McDougal*, law enforcement officers may not "engage in an unlimited search under the guise of a police inventory search." *State v. McDougal, supra* at 413. This recognizes the benign, non-investigatory nature of inventory searches and the impropriety of engaging in an investigative search of a vehicle under the "pretext" of inventorying its contents.[3] We are satisfied upon the record made at the suppression hearing that Officer Szombathelyi's search of the defendant's car was not a disguised search for evidence of a crime. *Compare: Thompson v. State*, 83 Wis.2d 134, 265 N.W.2d 467 (1978).

In this case we must consider whether a locked automobile trunk is within the permissible scope of an otherwise valid inventory search. In *McDougal* the police, during the course of an inventory search, found two locked suitcases in the locked trunk[4] of the defendant's impounded vehicle. Finding the keys to the suitcases in the vehicle's glove compartment, the police opened the

---

[3] *Thompson v. State*, 83 Wis.2d 134, 141, 265 N.W.2d 467 (1978); *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). *See also* the concurring opinion of Mr. Justice Powell, 428 U.S. at 383.

[4] There was some question in that case as to whether the trunk or the car itself was capable of being locked. For our purposes, we assume the vehicle and the trunk were locked.

suitcases and found them to contain marijuana. We affirmed the trial court's suppression of the contents of the suitcases on the ground that an inventory search did not extend to the contents of locked suitcases found in the car. Although we commented there that "[t]he sheriff's department could have simply inventoried 'two green suitcases,'" and also that the keys found in the glove compartment "could easily have been inventoried and kept with the defendant's wallet, his pocket comb and fountain pen," *State v. McDougal, supra* at 413, the opinion did not explicitly endorse the legal propriety of the inventory search of the trunk and glove compartment. We are aware that legal authority is to be found both approving and disapproving trunk inventory searches,[5] but in view of the recognized purposes served by inventory searches, we conclude that the better-reasoned cases authorize police inventory searches of locked and unlocked automobile trunks, glove compartments, and other compartments[6] of a vehicle in which the owner

[5] We are aware that authorities on this question are divided. [*Compare: United States v. Edwards*, 577 F.2d 883, 894 (5th Cir. 1978) (en banc) *cert. denied* 439 U.S. 968; *United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir. 1977); *People v. Meeks*, 194 Colo. 214, 570 P.2d 835, 838 (1977); *Schaum v. Commonwealth*, 215 Va. 498, 211 S.E.2d 73, 74–75 (1975); and *State v. Houser*, 21 Wash. App. 30, 584 P.2d 410 (1978) (approving searches of trunks) *with United States v. Lawson*, 487 F.2d 468, 475 (8th Cir. 1973); *People v. Grana*, 185 Colo. 126, 527 P.2d 543, 545 (1974); *State v. Boster*, 217 Kan. 618, 539 P.2d 294, 302 (1975); *State v. Hatfield*, 364 So.2d 578, 582 (La. 1978); *State v. Downes*, 285 Ore. 369, 591 P.2d 1352, 1353 (1979); and *State v. Catlette*, 88 S.D. 406, 221 N.W.2d 25, 29 (1974) (disapproving searches of trunks).]

[6] By "other compartments" we mean storage compartments, such as console compartments, dashboard compartments, or ash trays, which may be infinitely varied by automobile designers. We do not mean places such as gas tanks and other fluid reservoirs or structural cavities in a vehicle which are not likely to be used to store personal effects.

might reasonably be expected to put personal effects or items of value.[7]

To exclude these kinds of compartments from the scope of inventory searches would clearly thwart the first stated objective of protecting the property itself while it is in custody. It is a meritless argument to say that the owner of the car was satisfied with the security offered by these compartments because the storage of a vehicle at a police storage yard for an indeterminate length of time was not likely to be the sort of circumstances the owner had in mind in storing valuables in the car. Even more clearly, the second purpose for these searches, protection of the police against claims of loss, is not served if police do not inventory the entire contents of the vehicle. Police cannot reasonably be expected to defend against claims of loss, whether legitimate or false, reasonable or unreasonable, if they are not permitted to catalog what they took into custody. Moreover, a car owner inclined to make a false claim could be expected to base the claim on property missing from an area the police were not permitted to search. Finally, the third purpose, protection of the police from potential danger, can only be served by allowing police to inven-

---

[7] *United States v. Staller*, 616 F.2d 1284, 1289–90 (5th Cir. 1980) ; *United States v. Edwards, supra; United States v. Martin, supra; State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311, 1313, (1980), "To forbid entry into trunks as part of an inventory search would frustrate the very purpose of the inventory, since the trunk is a likely place for valuables to be stored."; *Reese v. Commonwealth*, 265 S.E.2d 746, 749, (Va. 1980) ; *People v. Meeks, supra; State v. Houser, supra;* The majority opinion in *South Dakota v. Opperman*, 428 U.S. at 372, cited numerous cases extending inventory searches to a vehicle's glove compartment because that "is a customary place for documents of ownership and registration, . . . as well as a place for the temporary storage of valuables."

tory the contents of automobile trunks and other compartments. Whether the potential danger is a weapon which, if stolen, could pose a serious safety threat, explosives or even a leaking spare gasoline container threatening to ignite the vehicle, it can be averted only by permitting police to discover these before the potential harm materializes. In sum, we agree with the supreme court of New Mexico in *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311, 1313, (1980), that to forbid valid inventory searches of automobile trunks, glove compartments, and the like would effectively frustrate the fundamental purposes of such searches. (*See:* n. 7, *ante* at 354.)

Having ruled that Officer Szombathelyi could legally open the defendant's car trunk for purposes of conducting an inventory, we must now decide whether the search of the defendant's purse, found inside the trunk, was also within the permissible scope of that inventory. For the reasons set forth in *McDougal,* we conclude that it was not. In that case we said:

"To most people the contents of their locked suitcases or traveling bags are or can be extremely personal. To have these items examined and handled by strangers can cause embarrassment and humiliation. It is this type of invasion into one's privacy that our constitutions sought to prohibit." 68 Wis.2d at 413–14.

This prohibition extends not just to locked suitcases in car trunks but to all closed or sealed containers, locked or unlocked, found within the vehicle.[8]

___

[8] We find the reasoning of the United States Supreme Court in *Arkansas v. Sanders,* 442 U.S. 753, 766 (1979), equally applicable to inventory searches. The Court held that a warrantless search of a vehicle based upon probable cause in the presence of exigent circumstances did not extend to luggage found in the car, holding "that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations." One of the reasons

In recognizing that there is a greater expectation of privacy in closed or sealed containers found inside a vehicle than there is in a vehicle itself, we are balancing the need of the government (here, those relating to inventory searches) against the right of people to be free of warrantless intrusions into their personal effects.[9] The balance tips in favor of the privacy of personal effects because the purpose of an inventory can be adequately served by inventorying a container as a closed unit. It is thereby secure from theft, and exposure to claims of loss is reduced.[10] *But see: State v. McDougal,* 68 Wis.2d at 415–16 (Robert Hansen, J., dissenting). Therefore, in conducting an inventory search of a vehicle, police officials may not open or search the contents of closed containers which could alternatively be removed from the vehicle and inventoried as a unit.

Because it was determined upon remand to the suppression court that Officer Szombathelyi actually *opened* the defendant's purse to search its contents, we find that the search of the purse exceeded the permissible

---

underlying the Court's conclusion was that luggage tends to contain very personal items. Ironically, this is the reason why the contents of automobiles are inventoried. But the Court observed that, once the suitcase itself is seized, the related exigency of mobility no longer exists, so there is no justification for a warrantless search. *But see: United States v. Smith,* 621 F2d 483, 488 (2d Cir. 1980), suggesting, in dicta, that *Sanders* does not apply to inventories.

[9] *South Dakota v. Opperman,* 428 U.S. at 378 (Powell, J., concurring); *United States v. Bloomfield,* 594 F.2d 1200, 1202 (8th Cir. 1979); *State v. Mangold,* 82 N.J. 575, 414 A.2d 1312, 1318 (1980).

[10] *United States v. Bloomfield, supra; State v. Daniel,* 589 P. 2d 408, 417–18 (Alaska 1979); *State v. Keller,* 265 Ore. 622, 510 P.2d 568 (1973).

scope of an inventory search and cannot be justified on that exception.[11]

## B.

While the search of the defendant's vehicle, including the trunk, can also be upheld as a probable cause search by virtue of the "automobile exception" to the warrant requirement, that exception does not extend to the purse. "[W]e hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway." *Arkansas v. Sanders*, 442 U.S. 753, 766 (1979). (*See:* n. 8, *ante* at 355.)

The court of appeals reviewed a record which showed the suppression court determined it was unnecessary to make a finding concerning the contradictory testimony of Officer Szombathelyi regarding the circumstances

[11] If the suppression court had found that the purse was found lying open by Officer Szombathelyi and that its contents fell out upon the removal of the purse, the contents properly could have been inventoried, as an open container or one so insecure as to be unable to retain its contents if moved cannot reasonably be accorded more of an expectation of privacy than the diminished expectation of privacy of the vehicle in which it is found. *See: United States v. Bloomfield*, 594 F.2d at 1203. *See also: State v. Cavegn*, 294 N.W.2d 717, 723, (Minn. 1980), involving a "stop and frisk" context but in which the court suggests that the type of container is a factor in determining the extent to which it carries a legitimate expectation of privacy: "A grocery bag, like a cardboard box, is not usually a 'repository of personal effects' and should not be subject to the warrant requirement, as is a suitcase, duffel bag, or footlocker."

under which he recovered the contents of the purse. The suppression hearing was held prior to the decision of the Supreme Court in *Arkansas v. Sanders*. Prior to *Sanders* numerous courts had held that a probable cause search of an automobile, excused from the warrant requirement by the automobile exception, could properly extend to luggage and containers found in the automobile. Subsequent to the time of the suppression court's determination, the rule of these cases was changed by *Sanders*. This sequence of events explains why the suppression court at the time of the suppression hearing concluded it had no need to determine whether the defendant's purse fell open or was opened and searched by the police. Our discussion of the exceptions to the warrant requirement reveals why the finding has become critical to this review.

Because of the absence of this critical finding, we remanded the record in this case to the suppression court for the purpose of having that court determine, from the record previously made before it, whether the searching officer opened the purse found in the trunk of the defendant's car or whether the purse fell open, spilling its contents, when picked up by the officer. Our decision to do so was influenced by our adoption of a similar course of conduct in *Bosket v. State,* 31 Wis.2d 586, 599–600, 143 N.W.2d 553 (1966), *on review following remand* 55 Wis.2d 121, 122, 197 N.W.2d 767 (1972). In *Bosket,* the trial court made no separate determination of the voluntariness of the defendant's confession as required by *Jackson v. Denno,* 378 U.S. 368 (1964), and *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965). Thus this court remanded the case with directions that the trial court "conduct a hearing on the issue of the voluntariness of the defendant's written confession . . . and shall make proper findings of fact." *Bosket v. State,* 31 Wis.2d at 599. A remand for the

making of findings of fact is appropriate where, as here, the judge who should have made but failed to make the finding is still on the bench, *Walber v. Walber,* 40 Wis.2d 313, 319, 161 N.W.2d 898 (1968), and where, as here, conflicting evidence supports either view of the contested fact. *Doyle v. Teasdale,* 263 Wis. 328, 337, 339, 57 N.W.2d 381 (1953). In this case, no additional hearing was required; a single finding of fact remained to be made. We held our review in abeyance until the finding was made. Thus we had the benefit of a determination by the suppression court when we reviewed the case that was not available to the court of appeals.

On remand, the suppression court found that Officer Szombathelyi discovered the purse in the trunk in a closed condition and opened it, finding the packets of heroin inside. This finding is consistent with the officer's statement, made at the preliminary examination, which was used to impeach his testimony at the suppression hearing. The suppression court's reliance on this statement is proper, for we recently held that prior, inconsistent statements are properly admissible under the Wisconsin Rules of Evidence as substantive evidence. *Vogel v. State,* 96 Wis.2d 372, 386, 291 N.W.2d 838 (1980). Because the suppression court's choice between the conflicting statements made by the searching officer involves nothing more than a determination of credibility by the finder of fact, it must be accepted by this court as we do not consider the testimony inherently or patently incredible. *State v. Mordeszewski,* 68 Wis.2d 649, 656, 229 N.W.2d 642 (1975).

Because of this finding, viewed in light of the rule in *Sanders,* the evidence the defendant sought to suppress is the result of a warrantless search which is not justified by the probable cause exception to the warrant requirement.

## III.

This brings us to a consideration of the medical emergency exception to the warrant requirement, upon which the court of appeals found the search of the defendant's purse justifiable.

In *State v. Pires*, 55 Wis.2d 597, 604, 201 N.W.2d 153 (1972), we approved an "emergency rule exception," recognizing that neither the Fourth Amendment nor the Wisconsin Constitution bars police officers from making warrantless entries and searches when they reasonably believe that a person is in need of aid. In that case, police officers received a radio dispatch to go to the defendant's address because of a report that there was the body of a child and a semiconscious woman in the dwelling. When no response was received at either door, the police entered the house and began a search of the house for victims or for someone responsible for the victims. We held the entry and search to be justified by the compelling need to find and assist the victims whom the officers reasonably believed to be in distress and in need of that assistance. *Id.* at 604. *See also: State v. Hoyt*, 21 Wis.2d 284, 297, 128 N.W.2d 645 (1964); *State v. Davidson*, 44 Wis.2d 177, 194, 170 N.W.2d 755 (1969); *La Fournier v. State*, 91 Wis.2d 61, 67–68, 280 N.W.2d 746 (1979).[12] The doctrine has been held to apply in

[12] The emergency rule exception to the warrant requirement has been accepted in numerous state and federal cases. *See, e.g., People v. Roberts*, 47 Cal.2d 374, 303 P.2d 721, 723–24 (1956); *Patrick v. State*, 227 A.2d 486, 488–90 (Del. 1967); *People v. Smith*, 47 Ill.2d 161, 163–64, 265 N.E.2d 139 (1970); *Guardiola v. State*, 268 Ind. 404, 413, 375 N.E.2d 1105, 1110–11 (1978); *Davis v. State*, 236 Md. 389, 204 A.2d 76, 80–82 (1964); *State v. Hardin*, 90 Nev. 10, 518 P.2d 151 (1974); *People v. Mitchell*, 39 N.Y.2d 173, 347 N.E.2d 607, 609–10 (1976); *United States v. Miller*, 589 F.2d 1117, 1125 (1st Cir. 1978); *United States v. Barone*, 330 F.2d 543, 545 (2d Cir. 1964); *United States v. Haley*, 581 F.2d

situations where police conduct searches to ascertain the cause of a person's unconscious or semiconscious state in order to protect the person's health[13] or to identify persons found in such a state.[14] The court of appeals similarly held that, in the medical emergency situation presented, "the police officer had a right to open the purse in order to determine whether the defendant had injected something potentially fatal into his body." *State v. Prober*, 87 Wis.2d at 436.

In *La Fournier v. State*, 91 Wis.2d at 68, we stated that "[a] victim of drug overdose clearly presents an emergency of sufficient proportions to render a warrantless entry 'reasonable.'" The defendant does not contest this statement. Rather, he argues, the emergency doctrine is inapplicable to the case at bar because the police searched his car for the purpose of inventorying its contents and not with the intent to render or facilitate emergency assistance. The court of appeals held that the searching officer's actual state of mind was irrelevant because the circumstances, viewed objectively, justified the officer's action. Thus the critical question before us is whether a medical emergency justification for an otherwise illegal search may be found solely by an *objective*

723, 725–26 (8th Cir. 1978); *Root v. Gauper*, 438 F.2d 361, 364–65 (8th Cir. 1971); *Wayne v. United States*, 318 F.2d 205, 209–14 (D.C. Cir. 1963) (opinion of Burger, J.). *See also:* Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buff. L. Rev. 419 (1972).

[13] *People v. Smith, supra; Guardiola v. State, supra; Howell v. State*, 300 So.2d 774, 775 (Miss. 1974); *Patella v. State*, 367 S.W. 2d 340 (Tex. Cr. App. 1963); *Vauss v. United States*, 370 F.2d 250, 252 (D.C. Cir. 1966); *United States v. Haley, supra.*

[14] *People v. Gonzales*, 182 Cal. App.2d 276, 279, 5 Cal. Rptr. 920, 923 (1960); *People v. Smith, supra; State v. Agent*, 101 N.J. Super. 190, 192, 243 A.2d 846, 847 (1968); *State v. Jordan*, 79 Wash.2d 480, 484–85, 487 P.2d 617, 620 (1971); *Vauss v. United States, supra; United States v. Haley, supra.*

assessment of the searching officer's actions in light of the facts and circumstances confronting him at the time of the search, notwithstanding his own testimony negating that justification. For the reasons which follow, we conclude that a search of the purse found in the defendant's car cannot be upheld under the emergency doctrine exception to the warrant requirement.

The court of appeals' application of the emergency doctrine demonstrates a misunderstanding of our application of the elements and the reasoning underlying the doctrine. The earliest applications of the emergency doctrine by this court indicate that it is the law enforcement officer's purpose to render aid which justifies a warrantless search. "The element of reasonableness is supplied by the compelling need to assist the victim or apprehend those responsible, not the need to secure evidence." *State v. Pires,* 55 Wis.2d at 604 (footnote omitted). "[T]he purpose of assisting the victim if still alive supplied a compelling reason for immediate entry, quite apart from the purpose of prosecuting for crime." *State v. Hoyt,* 21 Wis.2d at 297.[15] We have also recognized that the emergency doctrine must be strictly construed so as to keep the warrantless intrusion as limited as possible. *State v. Pires,* 55 Wis.2d at 606; *La Fournier v. State,* 91 Wis.2d at 68.[16] "There must be a direct relationship between the area to be searched and the emergency." *People v. Mitchell,* 39 N.Y.2d 173, 347 N.E.2d 607, 610 (1976). If law enforcement officers inadvertently discover incriminating evidence in plain view or as a result of some activity on their part which bears a material relevance to the initial purpose for their entry, "they

___

[15] *See: La Fournier v. State,* 91 Wis.2d 61, 67–68, 280 N.W.2d 746 (1979); *Wayne v. United States,* 318 F.2d at 212.

[16] *See also: Mincey v. Arizona,* 437 U.S. 385, 393 (1978), *quoting Terry v. Ohio,* 392 U.S. 1, 26 (1968) ("a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation' ").

may lawfully seize it without a warrant. . . . The exigent circumstances legitimate the presence, and the relevance of the discovery to the justification for the entry sanctions the seizure." Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buff. L. Rev. 419, 427 (1972). However, searches which exceed the scope of an initially lawful intrusion are not permitted "unless further steps are taken to independently satisfy constitutional mandates." *State v. Pires*, 55 Wis.2d at 607.

Similarly, the privilege to enter to render aid or assistance or in response to some other exigency will not justify a search of the premises or person for some other purpose.[17] Unless the search or intrusion is motivated by the perceived need to act in the face of an emergency or exigency, the emergency doctrine exception is inapplicable and will not justify the failure to obtain a warrant. As stated by the New York Court of Appeals in *People v. Mitchell, supra*, "the protection of human life or property in imminent danger must be the motivation for the search rather than the desire to apprehend a suspect or gather evidence for use in a criminal proceeding."[18] 347 N.E.2d at 610. Like the requirement that an emergency search may not extend to areas unrelated to the emergency, conditioning the availability of the emergency doctrine exception on the searching officer's motivation is mandated by the doctrine's rationale that

[17] *See: People v. Roberts*, 303 P.2d at 723; Mascolo, 22 Buff. L. Rev. at 428. Thus the emergency doctrine is generally defined as requiring that the law enforcement officers enter "without the accompanying intent to either search or arrest." *United States v. Barone*, 330 F.2d at 545. *See also: Patrick v. State*, 227 A.2d at 489; Mascolo, *supra* at 426.

[18] *See also: United States v. Miller*, 589 F.2d at 1126, where the court upheld a warrantless search of an abandoned boat on the ground that "a legitimate non-criminal purpose, investigation of a drowning, motivated [the officers'] search."

the preservation of human life is paramount to the right of privacy protected by the Fourth Amendment. Thus searches which are not motivated by this paramount interest, and which instead serve the state's interest in apprehending the perpetrator of a crime that has already occurred, are not excused from compliance with the warrant requirement by the reasoning of the emergency doctrine exception.

In *United States v. Dunavan*, 485 F.2d 201, 203 (6th Cir. 1973), the court deemed "the critical problem to be whether the officers who opened the . . . briefcase taken from [the defendant's] car did so, as they asserted, as a matter of rendering aid to a person in a seizure, or whether this explanation of their search was a pretext." In *Schraff v. State*, 544 P.2d 834, 844 (Alaska 1975), a warrantless search of a wallet was held invalid, partly for the reason that the searching officer testified "that several motives, including crime detection, prompted his search of [the defendant's] wallet." In the case at bar, the searching officer testified that the sole purpose for the search was to inventory the contents of the defendant's car. Thus the search of the defendant's closed purse cannot be justified as having been undertaken for the preservation of human life, a purpose which overrides the Fourth Amendment's guarantee of privacy.[19]

Neither *Scott v. United States*, 436 U.S. 128 (1978), nor any of the cases it cites requires a contrary conclusion. None of the cases involved a warrantless intrusion claimed to be justified as an emergency search. *Scott* held that the failure to make good-faith efforts to comply with the minimization requirements of a wiretap order does not necessarily constitute a violation of Title

---

[19] We have previously rejected a proffered justification for a warrantless search when the expressed motivation for the search was inconsistent with the asserted justification. *Thompson v. State*, 83 Wis.2d 134.

III of the Omnibus Crime Control and Safe Streets Act of 1968, so long as the interceptions are found reasonable upon an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time. *Id.* at 136. The cases cited in *Scott* stand for the proposition that a person lawfully subjected to a custodial arrest may be searched even if the searching officer did not fear the suspect and was not specifically looking for weapons[20] and that the test of probable cause is not the articulation of the arresting or searching officer's subjective theory but the objective view of the facts.[21] With regard to the emergency doctrine, the objective approach approved in *Scott* must be employed in determining the reasonableness of a law enforcement officer's belief that there is an emergency at hand and an immediate need for assistance for the protection of life or property.[22] But we decline to abandon the additional *Pires* motivation requirement.

■

Thus the test for a valid warrantless search under the emergency doctrine requires a two-step analysis. First, the search is invalid unless the searching officer is actually motivated by a perceived need to render aid or assistance. Second, even though the requisite motivation is found to exist, until it can be found that a reasonable person under the circumstances would have thought an emergency existed, the search is invalid. Both the subjective and objective tests must be met.

---

[20] *United States v. Robinson*, 414 U.S. 218, 236 (1973).

[21] *See: United States v. Bugarin-Casas*, 484 F.2d 853, 854 (9th Cir. 1973); *Dodd v. Beto*, 435 F.2d 868, 870 (5th Cir. 1970); *Klingler v. United States*, 409 F.2d 299, 304 (8th Cir. 1969); *Green v. United States*, 386 F.2d 953, 956 (10th Cir. 1967); *Sirimarco v. United States*, 315 F.2d 699, 702 (10th Cir. 1963).

[22] *See: People v. Smith*, 7 Cal.3d 282, 287, 496 P.2d 1261 (1972); *People v. Mitchell*, 383 N.Y.S.2d at 247–48, 347 N.E.2d at 609–10; *United States v. Miller*, 589 F.2d at 1125; *Root v. Gauper*, 438 F.2d at 364.

While there are inherent difficulties in assessing the purpose of a search, these do not prevent the determination from being made. In some cases, the searching officer's motivation or purpose may be revealed by the officer's testimony, as here and in *Thompson v. State, supra*. The purpose of the search may also be discerned from its scope and the manner conducted. Conduct by the searching officer which is inconsistent with the purported reason for the entry is cause for skepticism. *State v. Pires*, 55 Wis.2d at 605–07; *Condon v. People*, 176 Colo. 212, 489 P.2d 1297, 1300 (1971). At the suppression hearing in the case at bar, Office Szombathelyi testified no less than three separate times that the purpose of his search was to inventory the contents of the defendant's car; at one point he agreed that his "sole purpose in going through the trunk of that automobile was to inventory its contents." From this record we conclude the medical emergency exception could not justify the warrantless search of the defendant's automobile and purse.

We conclude, therefore, that the search of the defendant's purse cannot be justified by any exception to the warrant requirement. Accordingly, the denial of the defendant's motion to suppress the evidence was error.

*By the Court.*—The decision of the court of appeals is reversed; judgment reversed and cause remanded for a new trial, with the instruction that the contents of defendant's purse be suppressed as evidence.

ABRAHAMSON, J., concurs. (No opinion filed.)

STEINMETZ, J., took no part.