STATE of Minnesota, Respondent,

v.

Clayton A. TERRELL, Appellant.

No. 49317.

Supreme Court of Minnesota.

Aug. 24, 1979.

Rehearing Denied Oct. 2, 1979.

Bruce C. Douglas, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Jane Prohaska, Sp. Asst. Attys. Gen., St. Paul, John F. Corbey, County Atty., Mankato, for respondent.

OTIS, Justice.

Defendant, after being charged by indictment with second-degree murder, Minn.St. 609.19, was found guilty of the charge by a district court jury and was sentenced by the trial court to a maximum prison term of 40 years. On his appeal from judgment of conviction defendant contends that (1) the trial court erred in denying his request for a suppression hearing before the grand jury met, (2) the trial court erred in denying his request for a dismissal of the indictment, (3) the trial court erred in permitting the state to rely on the grand jury transcript in meeting its burden of proof at the omnibus hearing, (4) the trial court erred in denying a motion to suppress certain evidence seized at the murder scene after a warrantless entry, and (5) the evidence on the issue of intent was legally insufficient. We affirm.

1. Defendant's contention that a suppression hearing should have been held before the grand jury met is based on a liberal reading of Minn.St. 626.21, which provides in relevant part that a person aggrieved by an unlawful search and seizure may seek relief in the district court and that "If the motion is granted the property shall be restored unless otherwise subject to lawful detention, and it shall not be admissible in evidence at *any hearing or trial.*" (Italics supplied.) Defendant contends that the words "any hearing" include a meeting of the grand jury and that adopting his reasoning is the only way an innocent defendant can be protected from unfair indictment on the basis of illegally obtained evidence or inadmissible hearsay evidence.

As the district court pointed out, the Rules of Criminal Procedure do not provide for a suppression hearing before a grand jury convenes to hear evidence against a person. What the rules provide is a way for an indicted person to challenge the evidentiary basis for an indictment after it has been issued. Rule 18.06, subd. 2. In providing for a postindictment challenge to the evidentiary basis for the indictment, the rules appear to go considerably farther than due process would require. See, *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); also, *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

2. Defendant next contends that even if the court did not err in denying this request for a suppression hearing before the grand jury convened, the trial court erred in failing to dismiss the indictment that was returned because the transcript of the grand jury revealed that the jury relied on inadmissible evidence.

Rule 18.06, subd. 2, Rules of Criminal Procedure, provides:

"The grand jury may find an indictment when upon all of the evidence there is probable cause to believe that an of-

fense has been committed and that the defendant committed it. Reception of inadmissible evidence shall not be grounds for dismissal of an indictment if there is sufficient admissible evidence to support the indictment."

Our reading of the grand jury transcript satisfies us that the grand jury heard sufficient admissible evidence to justify a finding of probable cause to believe that defendant had intentionally killed his wife.

■ 3. Defendant's next contention is that the state improperly relied solely on the grand jury transcript to meet its burden of proof on the suppression issue at the omnibus hearing and that this violated his right to due process and his right to confront witnesses.

What happened at the omnibus hearing was this: Defendant moved to dismiss the indictment and sought suppression of a number of evidentiary items. The state summarized the evidence to which defendant's suppression motion applied and then offered the transcript of the grand jury for consideration. Defense counsel objected to this, saying that in his opinion the state had an obligation to call witnesses who are subject to cross-examination and that by failing to do so it had failed to meet its burden of proof on the suppression issue. The trial court, erroneously relying on *State v. Florence*, 306 Minn. 442, 239 N.W.2d 892 (1976), which dealt with the issue of probable cause to support a complaint, ruled that the state could rely on the transcript without calling the witnesses. Defendant, who apparently had previously been made aware of the state's position on this and had already subpoenaed the witnesses that the state presumably would have called if it had not relied on the grand jury transcript, called a total of 21 witnesses on the suppression issue, including all the officers who testified at the grand jury on the search issue.

The state, citing *State v. Grey*, 256 N.W.2d 74 (Minn.1977) (holding that a defendant has a right to be present and confront witnesses at a pretrial suppression hearing), now apparently concedes that the prosecutor should have called witnesses on the suppression issue, but contends that in this case defendant cannot show that he was prejudiced by the prosecutor's failure to call the witnesses. Specifically, the state points out that defendant had the opportunity to and did, in fact, confront all the witnesses on whose testimony the state was relying.

We considered a related issue in *Jensen v. State*, 278 N.W.2d 752 (Minn.1979). In that case the police had obtained two statements from the defendant. However, at the pretrial suppression hearing the prosecutor did not call either of the officers who had elicited the first statement from defendant but did call the officer who had elicited the second statement. This officer provided the testimony concerning the elicitation of the earlier statement, saying that a written report of one of the two officers who had obtained the statement showed that a *Miranda* warning had been given and a waiver obtained. In affirming, we stated that the prosecutor should have called at least one of the officers who elicited the first statement but that reversal was unnecessary because the officers who elicited the first statement did testify at trial and, in any event, the second statement, which was identical to the first, had clearly been proven to be independently admissible at trial.

Here the prosecutor should have called witnesses on the suppression issue rather than relying on the transcript of the grand jury testimony because the state had the burden of proof on this issue and defendant had not had an opportunity to confront the witnesses in question at the grand jury proceeding. However, since the defendant called the witnesses and had an opportunity to impeach them, we hold that the court in determining the suppression issue did not rely on evidence admitted in violation of defendant's right of confrontation.

■ 4. Defendant's next contention is that the trial court erred in denying his motion to suppress the items seized from the cabin in which the killing occurred. Defendant includes in this the body, the gun, and a spent slug found on the floor near the body.

The key case to see is *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). There the court held that there is no "murder scene exception" to the warrant requirement. That holding came in the context of a case in which the Arizona Supreme Court had upheld an intensive and prolonged (4 day) warrantless search of the house of a defendant in which a murder of a policeman had occurred. In its opinion the court had the following to say about the "emergency exception" to the warrant requirement:

"* * * We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. *Michigan v. Tyler, supra,* 436 U.S. [499], at 509–510, 98 S.Ct. [1942], at 1950–1951, 56 L.Ed.2d 486. 'The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal, absent an exigency or emergency.' *Wayne v. United States,* 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Michigan v. Tyler, supra,* 436 U.S., at 509–510, 98 S.Ct., at 1950–1951; *Collidge v. New Hampshire,* 403 U.S., at 465–466, 91 S.Ct., at 2037–2038." 437 U.S. 392, 98 S.Ct. 2413, 57 L.Ed.2d 300.

The facts adduced at the omnibus hearing support the district court's determination that the emergency exception justified the warrantless entry of the cabin in which the killing occurred. It was late on the evening of March 12, 1978, when Mankato police first learned that defendant may have shot his wife, but their informant stated that her information might be wrong and that she did not know when the shooting occurred. It was not until after midnight that the officers knew that the incident they were investigating had occurred at Madison Lake and not until they were on their way there that they learned the exact address. Whatever delays that occurred after learning where the incident had occurred were delays caused by jurisdictional problems (specifically, Mankato police had to call in the sheriff's office) and a problem of rank (fear on the part of sheriff's deputies of doing anything without approval of the chief deputy or the sheriff). Sheriff's deputies proceeded immediately to the scene after they were called and the entry occurred shortly after the chief deputy arrived. While the information indicated that a homicide had occurred there, the chief deputy felt that it was possible that the victim, if there was a victim, might still be alive. It is true that no one called an ambulance—a fact that suggested that no one believed the victim might be alive—but as the chief deputy testified, he and other officers were trained in first aid and the cabin was right across the street from the Madison Lake Fire Department. While the officers perhaps delayed more than they ideally should have, we conclude that their warrantless entry was legal.

■ Defendant, anticipating this holding, urges us to hold alternatively that once the chief deputy left the cabin to call the sheriff, he should not have gone in again without a warrant. Defendant contends that if he is right in this, then the trial court should have suppressed everything but the gun and the body—particularly the spent slug and some photographs. We do not see the need for deciding this issue because the spent slug and the photographs were not significant items of evidence. Stated differently, even if erroneously admitted, the error was harmless beyond a reasonable doubt.

■ 5. Defendant's final contention is that the evidence on the issue of intent was legally insufficient. There is no merit to this.

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.