STATE of Minnesota, Appellant,

v.

Richard Faye AUMAN, Respondent.

No. C9-86-107.

Court of Appeals of Minnesota.

May 13, 1986.

Review Denied July 16, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert M.A. Johnson, Anoka Co. Atty., Barbara J. Harrington, Asst. Co. Atty., Anoka, for appellant.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

The state appeals from a pretrial order suppressing evidence obtained in a warrantless search of respondent. The state contends the pretrial court erred in excluding the evidence either because respondent consented to the search, or the search was reasonable under the emergency exception.

## FACTS

Respondent Richard Auman was charged with one felony count of possession of a schedule II controlled substance and one

misdemeanor count of unlawful possession of a hypodermic syringe. At an omnibus hearing on December 5, 1985, two police officers related the circumstances surrounding their warrantless search of Auman.

On September 5, 1985, at about 8:40 p.m., a resident of Blaine reported a man banging on windows and saying that he needed help. Officer Merlin King received a radio call that there was "somebody overdosed." King, Officer John Miller, and a third officer responded.

When the officers arrived, they saw Auman sitting on the sidewalk with several women around him, administering first aid or restraining him. Auman was acting irrationally, as one moment he would wildly scream, then he would suddenly calm down, only to start screaming again. He shouted that someone had put drugs in his drink and that he needed help. The officers felt that Auman was overdosing on drugs.

Officer Miller immediately called for an ambulance and then tried to learn Auman's identity. Miller twice asked Auman what his name was, but he did not respond. Miller explained that he wanted to establish Auman's identity so he could notify family or friends of Auman's condition and so he could assist the ambulance crew when they arrived.

Miller asked Auman if he could remove Auman's billfold from his pocket and Auman responded affirmatively. Miller reached into Auman's left rear pocket and removed what he originally thought was a billfold, but which he later learned was an eyeglass case. Miller said that before he opened the eyeglass case he knew it was not a billfold. Inside the case, Miller discovered a small scale and cocaine spoons, three of which were discolored from being heated. Upon analysis, this paraphernalia tested positive for methamphetamine.

Miller and King continued searching Auman. Miller first found a syringe in Auman's left rear pocket, then King removed a wallet from Auman's right rear pocket. The wallet contained a Minnesota driver's license in the name of "Burton Martinez" and a credit card with the name "W.A. Protaska," but no identification for Richard Auman. When Miller asked Auman if he was Martinez, Auman said "my name is Rick." The officers also found a baggie of marijuana and a vial of vitamin B. The ambulance arrived and Auman was tied to a stretcher and taken to Mercy Medical Center.

The pretrial court inquired into Miller's reasons for opening the eyeglass case. Miller stated that he was initially looking for identification. Although he did not expect to find identification in the glass case, he was not sure what he would find, so he opened the case.

The pretrial court found the eyeglass case was snapped shut and Officer Miller realized the case was not Auman's wallet before he opened it. The court concluded that Auman voluntarily allowed the officers to search for his wallet but that the officers exceeded the scope of Auman's consent by searching a closed container they knew was not his wallet. The court also concluded that the officers reasonably believed there was a medical emergency and their search was conducted in order to obtain information to aid treating Auman, but the court determined that opening the eyeglass case was improper. The court suppressed the eyeglass case, the spoons, and the scale because they were "improperly seized," but ruled the other evidence was admissible at trial. In a lengthy memorandum the court explained that Officer Miller was initially motivated by a concern for Auman's well-being. However, when Miller opened the sealed eyeglass case he was merely searching a suspicious container in order to discover evidence of a crime. The court felt that this was beyond the scope of an emergency search which had to be limited to areas reasonably likely to contain information of Auman's identification.

## ISSUES

1. Did the pretrial court clearly and unequivocally err in concluding a warrantless

search by police officers exceeded the consent given?

2. Did the pretrial court clearly and unequivocally err in concluding the evidence was not admissible as the product of an emergency search?

## ANALYSIS

■ When the state appeals a pretrial order in a felony case, this court will reverse the trial court only if the state clearly and unequivocally demonstrates that the trial court erred and that, unless reversed, the error will have a critical outcome on the trial. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). Respondent concedes that the ruling will have a critical impact on the outcome of any trial.

## I.

### Consent ·

The state contends the search of the eyeglass case was "reasonable" and Auman's failure to object brought the search of the eyeglass case within the scope of his consent. We disagree.

■ A warrantless search may be conducted when the subject of the search voluntarily consents to it. *State v. O'Neill,* 299 Minn. 60, 69, 216 N.W.2d 822, 828 (1974). The scope of a consensual search is limited, however, to the terms of its authorization. *State v. Powell,* 357 N.W.2d 146, 149 (Minn.Ct.App.1984).

■ The pretrial court found Auman gave Officer Miller permission to remove only his billfold from his pocket and that Miller knew the eyeglass case was not Auman's billfold. Based on these findings, the court concluded that the search exceeded the scope of any consent given. The pretrial court did not clearly and unequivocally err in this determination.

## II.

### The Emergency Exception

The emergency exception to the fourth amendment warrant requirement is a common-sense approach to the recurring situation where police officers uncover evidence of crime in the course of providing emergency assistance to injured or unconscious persons. The first formal statement of the doctrine appeared in *Wayne v. United States,* 318 F.2d 205 (D.C.Cir.1963), where then Judge Warren Burger stated:

a warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.

*Id.* at 212.

In *Vauss v. United States,* 370 F.2d 250 (D.C.Cir.1966), the emergency doctrine was extended to a warrantless search of a person. There, the police found a man unconscious on a street and while searching his pockets for identification they discovered narcotics. The court held the narcotics were legally seized, stating that "[a] search of one found in an unconscious condition is both legally permissible and highly necessary." *Id.* at 252.

The United States Supreme Court adopted the emergency exception in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). That opinion cited the "numerous state and federal cases" recognizing the right of police to respond to emergency situations. *See id.* at 392 and n. 6–7, 98 S.Ct. at 2413 and n. 6–7. The *Mincey* court did feel there were limits on the doctrine and a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Id.* at 393, 98 S.Ct. at 2413.

The Eighth Circuit relied on *Mincey* in upholding the legality of a search under facts very similar to the case at bar. In *United States v. Haley,* 581 F.2d 723 (8th Cir.1978), a police officer found a man lying in the street next to a parked car. The man lapsed into unconsciousness after telling the officer his name. After the officer unsuccessfully searched his pockets for identification, the officer then searched a

briefcase on the front seat of the car and discovered a driver's license and a firearm. Although the court found that Haley had a legitimate expectation of privacy in the contents of the briefcase, the court upheld the search. The court found the search justified because the officer reasonably believed that Haley was in need of immediate assistance. When the officer found no identification on Haley, the court felt that it was reasonable to search the briefcase to seek identification or medical alert cards that might be of assistance in saving Haley.

The only Minnesota case on the emergency exception is *State v. Terrell*, 283 N.W.2d 529 (Minn.1979). In *Terrell* police received a report of a shooting and entered a cabin without a warrant because they believed the victim might still be alive. The trial court denied the defendant's motion to suppress evidence seized at the cabin and the supreme court affirmed, stating "[t]he facts adduced at the omnibus hearing support the district court's determination that the emergency exception justified the warrantless entry of the cabin in which the killing occurred." *Id.* at 532.

Because no Minnesota case had yet applied the emergency doctrine to a search of a person, the pretrial court adopted the two-part test set forth by the Wisconsin Supreme Court in *State v. Prober*, 98 Wis.2d 345, 297 N.W.2d 1 (1980):

First, the search is invalid unless the searching officer is actually motivated by a perceived need to render aid or assistance. Second, even though the requisite motivation is found to exist, until it can be found that a reasonable person under the circumstances would have thought an emergency existed, the search is invalid. Both the subjective and objective tests must be met.

*Id.* at 365, 297 N.W.2d at 12.

The pretrial court concluded the *Prober* test was satisfied because the police officers searched Auman with a "reasonable belief that they were faced with a medical emergency." The pretrial court then went on to conclude the search was improperly

extended to the opening of the eyeglass case and suppressed its contents.

■ We have no quarrel with the pretrial court's adoption of the *Prober* analysis or its conclusion that an emergency situation did indeed exist. However, we agree with the state that this search was reasonable and justified by the exigent circumstances facing the officers and their obvious desire to facilitate medical treatment.

The police were confronted with an individual who said he was under the influence of some unknown drug and whose behavior was irrational and "wild." When the officers asked Auman his name, he would not or could not respond. In order to facilitate subsequent medical treatment, the officers then searched Auman for identification. When Officer Miller discovered the eyeglass case, he opened it even though he later said he did not expect to find identification inside. In fact, Auman had no identification.

We can find no reasoned basis on which to distinguish this search from those conducted in *Vauss* and *Haley*. Had Auman been completely unconscious rather than in a drug-induced stupor, a complete search of him for identification would have been reasonable. *See Vauss*, 370 F.2d at 251–52. If the police had not opened the eyeglass case until after they determined Auman had no identification anywhere else, a search of that "closed container" would also have been completely justified. *See Haley*, 581 F.2d at 726. We do not believe the reasonableness of this good faith search by concerned police officers turns on such inconsequential factual dissimilarities. We therefore hold that the pretrial court clearly and unequivocally erred in suppressing the contents of the eyeglass case.

## DECISION

The pretrial court did not err in determining respondent did not consent to a search of his eyeglass case. The court clearly and unequivocally erred in concluding the

search was not reasonable under the exigent circumstances of this case and in suppressing the fruits of that search.

Reversed and remanded for trial.