**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0834**

State of Minnesota,
Respondent,

vs.

Renee Zhoushkogeshig Gale,
Appellant.

**Filed May 11, 2026**
**Affirmed**
**Bond, Judge**

Hennepin County District Court
File No. 27-CR-24-7854

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kristyn Anderson, Minneapolis City Attorney, Caleb A. Johnson, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Kate M. Baxter-Kauf, R. David Hahn, Special Assistant Public Defenders, Lockridge Grindal Nauen PLLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Reyes, Judge; and Bond, Judge.

**SYLLABUS**

When determining whether the emergency-aid exception to the warrant requirement justifies a seizure under article I, section 10 of the Minnesota Constitution, a police officer's subjective intent is irrelevant.

**OPINION**

**BOND**, Judge

Appellant challenges the district court's denial of her motion to suppress evidence obtained after police, in responding to a 911 call that appellant was sleeping or unconscious in a car lawfully parked on a street, seized appellant by blocking in her car and placing tire deflation sticks under its wheels. Appellant argues that the seizure was not supported by reasonable, articulable suspicion of criminal activity and that it was not justified under the emergency-aid exception to the warrant requirement because the officer did not subjectively intend to render aid. Appellant acknowledges that an officer's subjective intent is irrelevant for purposes of applying the emergency-aid exception under the Fourth Amendment to the United States Constitution, but she contends that article I, section 10 of the Minnesota Constitution provides greater protection against unreasonable seizures in this context. Lastly, appellant argues that the officer lacked reasonable suspicion to expand the seizure into a driving while impaired (DWI) investigation by asking appellant to submit to field sobriety tests.

We conclude that the officer lacked reasonable, articulable suspicion of criminal activity to justify the seizure at its inception. But we also conclude that the emergency-aid exception to the warrant requirement justified the seizure under the Minnesota Constitution because the officer had an objectively reasonable basis to believe that there was an emergency requiring immediate law-enforcement assistance. In so doing, we decline appellant's invitation to interpret the Minnesota Constitution as providing broader protection than the federal constitution by requiring consideration of the officer's

2

subjective intent. We further conclude that the officer had reasonable, articulable suspicion of criminal activity to justify expanding the scope of the seizure into a DWI investigation. We therefore affirm.

**FACTS**

At approximately 5:15 p.m. on December 30, 2023, a Minneapolis police officer (the officer) responded to a 911 call reporting that a motorist "was slumped for approximately an hour . . . [with] their head . . . leaned back" in a parked car on Hennepin Avenue in Minneapolis.[1] A slumped motorist generally describes a person behind the wheel of a motor vehicle who is either asleep or under the influence of an intoxicant. As the officer later testified, because a slumped motorist can "wake up and become startled, stomp on the gas, and then take off . . . , resulting in wrecks, accidents, [or] people getting run over," the officer planned to box in the car and use tire-deflation devices to prevent the motorist from driving away.

When the officer arrived at the scene, it was dark and cold outside. The officer observed a car in a legal parking spot on the side of the street with its engine running. The motorist, later identified as appellant Renee Zhoushkogeshig Gale, "appeared to be slumped behind the wheel," with her head leaned back.[2] After additional officers arrived,

---

[1] These facts derive from the evidence received at the contested omnibus hearing and the district court's subsequent findings of fact.

[2] On the way to the scene, the officer learned that the car's registered owner had been arrested on a previous occasion. At some point after arriving, though, the officer realized the motorist was Gale, not the registered owner with the arrest record.

police boxed in Gale's car by parking squad cars close to the front and rear bumpers and placing tire deflation devices under the car's front wheels.

After waiting a few minutes for traffic to clear, officers positioned themselves on either side of the car while the officer repeatedly banged on the driver's side window and said, "Police, put it in park." Gale woke up as the officer was banging on the window, raised her head, and said, "What?" The officer again identified himself as a police officer and told Gale to put the car in park. The officer also attempted to open the car door but it was locked. Gale mouthed, "It is in park," and pointed to the gear shift. The officer responded, "Yep. Open the door." Gale rolled down her window and said "What?" and the office once again told her to open her door. Gale complied, and the officer directed Gale to step out of the car. Gale spent a few moments removing various items from her lap and taking off her seat belt and then she exited the car, explaining that she had fallen asleep waiting for a friend who never showed up.

The officer continued to talk to Gale "to evaluate whether she was under the influence of some type of medication, [or] whether she had some type of medical issue." The officer did not smell any intoxicating substances on Gale, did not think her speech was slurred, and did not observe that her eyes were watery, bloodshot, or glassy. The officer asked Gale if she had "had anything to drink," and she said no. The officer then asked Gale whether she would be willing to undergo field sobriety testing, and Gale agreed, requesting that the officer "give [her] a second" because she had "just woke[n] up." Based on the field sobriety test results, the officer sought and obtained a warrant for a blood or

4

urine sample. Gale provided a urine sample, and the toxicology report showed the presence of amphetamine, methamphetamine, fentanyl, and norfentanyl in Gale's system.

Respondent State of Minnesota charged Gale with one count of fourth-degree operation of a motor vehicle under the influence of a controlled substance in violation of Minn. Stat. § 169A.20, subd. 1(2) (2022), and one count of fourth-degree operation of a motor vehicle under the influence of a Schedule I or II controlled substance other than marijuana in violation of Minn. Stat. § 169A.20, subd. 1(7) (2022). Gale moved to suppress the evidence, arguing that (1) the officer did not have reasonable, articulable suspicion of criminal activity to justify the seizure, (2) the emergency-aid exception did not justify the seizure because the officer was not subjectively motivated to render aid, and (3) the officer expanded the scope of the seizure without reasonable, articulable suspicion of criminal activity by asking Gale to submit to field sobriety tests.

The district court held a contested omnibus hearing during which the officer testified consistent with the facts presented above, and footage from the officer's body-worn camera was received as an exhibit. The officer described his training and experience with drug investigations and explained that common physical indicia of being under the influence of a narcotic analgesic such as fentanyl can include drowsiness, sluggishness, grayish skin, a raspy voice, and being slow to respond. The officer also testified that, based on his training and experience, there are "bounce back" effects that may occur after the high of ingesting a stimulant has worn off, which can cause a person to experience low motor function and exhaustion. As to the initial seizure, the officer testified that his response would have been the same regardless of the motorist's identity because of his generalized concern that a

5

slumped motorist could wake up and drive away in a manner that might endanger pedestrians or other cars. Finally, the officer identified multiple reasons why he expanded the scope of the seizure by asking Gale to undergo field sobriety testing, including that Gale had been asleep in her car for more than an hour and the officer observed indicia of impairment once Gale was awake, such as that she was slow to respond and he had to "tell her things multiple times."

The district court denied Gale's motion to suppress, determining that the initial seizure of Gale's car was lawful for two alternative reasons. First, the district court determined that the officer had reasonable suspicion that Gale was under the influence of an impairing substance while in physical control of a motor vehicle. Second, the district court reasoned that, even if the officer lacked reasonable suspicion of criminal activity, the seizure was justified at its inception under the emergency-aid exception to the warrant requirement. Applying the legal framework argued by the parties, which was based on this court's decision in *State v. Lopez*, the district court found the emergency-aid exception was satisfied because the officer was subjectively motivated by concern for Gale's well-being and because a reasonable person would believe that an emergency existed. 698 N.W.2d 18, 23 (Minn. App. 2005). The district court further determined there was reasonable, articulable suspicion to expand the scope of the seizure into a DWI investigation.

Gale waived her jury-trial rights and stipulated to the prosecution's case to preserve her right to appeal the district court's pretrial suppression ruling under Minn. R. Crim. P. 26.01, subd. 4. The district court found Gale guilty of both counts. The court adjudicated Gale guilty of count two, operating a motor vehicle under the influence of a

6

Schedule I or II drug other than marijuana in violation of Minn. Stat. § 169A.20, subd. 1(7), and sentenced her to 62 days in jail with credit for time served.

Gale appeals.

**ISSUES**

I.      Did the police have reasonable, articulable suspicion to seize Gale?

II.     Was the seizure justified by the emergency-aid exception to the warrant requirement under article I, section 10 of the Minnesota Constitution?

III.    Did the police have reasonable, articulable suspicion to expand the scope of the seizure to investigate whether Gale was driving while impaired?

**ANALYSIS**

Gale challenges the district court's denial of her motion to suppress evidence. Whether reasonable suspicion exists is a mixed question of fact and law. *State v. Lugo*, 887 N.W.2d 476, 487 (Minn. 2016). We review the district court's findings of fact for clear error. *Id.* But we review whether the district court's findings establish reasonable suspicion de novo. *Id.* "The interpretation and application of the Minnesota Constitution is a legal question" that appellate courts review de novo. *State v. Castillo-Alvarez*, 836 N.W.2d 527, 534 (Minn. 2013).

The United States and Minnesota Constitutions protect against unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "[A] warrantless seizure is presumptively unreasonable unless one of a few specifically established and well-delineated exceptions applies." *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (quotations omitted). The state bears the burden to establish that an exception to the warrant requirement applies. *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003).

7

Evidence obtained in violation of the federal or state constitution must be suppressed. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011).

Under the Minnesota Constitution, "a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). The parties agree that Gale was seized when police boxed in her car with their squad cars and placed tire deflation devices under her car's front wheels. *See Klotz v. Comm'r of Pub. Safety*, 437 N.W.2d 663, 665 (Minn. App. 1989), *rev. denied* (Minn. May 24, 1989) (holding that a seizure occurred when police partially blocked in defendant's car with squad car and instructed defendant to stop and identify himself). We agree as well.

Gale challenges the lawfulness of the seizure on three grounds. First, Gale argues that the officer lacked reasonable, articulable suspicion that Gale was engaged in criminal activity to justify the seizure at its inception. Second, Gale argues that the seizure was not justified under the emergency-aid exception to the warrant requirement because the state failed to establish that the officer was subjectively motivated to render aid, which Gale contends is required under the Minnesota Constitution. And third, Gale argues that the officer had no reasonable, articulable suspicion to expand the scope of the initial stop into a DWI investigation by asking her to undergo field sobriety tests. We address each argument in turn.

8

**I.    Police did not have reasonable, articulable suspicion of criminal activity to justify the seizure at its inception.**

One well-recognized exception to the warrant requirement allows an officer to conduct a brief, investigative seizure if the officer has reasonable, articulable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 16, 21-22 (1968); *Diede*, 795 N.W.2d at 842. "Reasonable suspicion must be based on specific, articulable facts that allow the officer to be able to articulate at the omnibus hearing that he or she had a particularized and objective basis for suspecting the seized person of criminal activity." *Diede*, 795 N.W.2d at 842-43 (quotation omitted). In determining whether an officer had reasonable suspicion, courts consider the totality of the circumstances, *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021), and recognize that a police officer may "draw inferences and deductions that might well elude an untrained person," *Lugo*, 887 N.W.2d at 487 (quotation omitted). The reasonable-suspicion standard is "not high" but it requires police "to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted); *see also Diede*, 795 N.W.2d at 843 ("A hunch, without additional objectively articulable facts, cannot provide the basis for an investigatory stop." (quotation omitted)).

Here, the officer testified that he seized Gale's car because it was a slumped-motorist call. Specifically, a 911 caller reported that a motorist "was slumped for approximately an hour" on a Minneapolis street with their head "leaned back." Upon arriving at the scene, the officer saw Gale "slumped behind the wheel, in the driver's seat" with her head back. In the officer's experience, "slumped motorists" may be asleep or

9

intoxicated and may wake up and drive away at a high speed, potentially harming people or property.[3] The officer observed additional facts when he arrived at the scene—including that the car's engine was running, the car was parked in a legal parking spot, and Gale was wearing her seatbelt—but the officer testified that he "put the sticks on the tire believing that it was a slumped motorist" and that his response to a slumped-motorist call would have been the same regardless of the motorist's identity.

Neither party cites any Minnesota case in which the seizure of a slumped motorist was upheld under the reasonable-suspicion standard, and we have found no such precedential authority. Instead, the parties primarily rely on *Lopez*. In *Lopez*, an employee called the police after several customers reported seeing an unconscious person in a car in a store's parking lot. 698 N.W.2d at 20. A police officer responded at 8:11 p.m. and observed the defendant's legally parked car in the parking lot, in addition to several dozen other cars. *Id.* at 20-21. After partially blocking the car, the officer observed the defendant

---

[3] The officer's body-worn camera shows that, on the way to the scene, the officer learned that the car had "ignition interlock with whiskey plates on it." On appeal, the state raises this "additional information in the record" pursuant to *State v. Grunig*, which provides that a respondent may "raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted." 660 N.W.2d 134, 137 (Minn. 2003). At the contested omnibus hearing, the officer did not identify the car's ignition lock or whiskey plates as contributing to any suspicion of criminal activity. *See Cripps*, 533 N.W.2d at 391-92 (stating that a police officer "must be able to point to objective facts" establishing reasonable suspicion of criminal activity). Neither party argued these facts before the district court, nor did the district court reference these facts in its order denying Gale's motion to suppress. Because the officer did not rely on the car's alleged ignition lock or whiskey plates, and the district court made no findings related to these facts, we do not consider them.

sitting in the driver's seat, seemingly unconscious, with her head against the window and her hands in her lap. *Id.* at 21. The officer woke the defendant by banging on the driver's side window and eventually opening the driver's side door, at which point the officer detected multiple indicia of intoxication. *Id.* We concluded that there were no facts indicating that, at the time the officer seized the defendant by partially blocking and approaching the car, "the officer had any articulable basis for suspecting that [the defendant] had engaged in criminal activity." *Id.* at 23. Instead, we affirmed the district court's denial of the defendant's motion to suppress on the basis of the emergency-aid exception to the warrant requirement. *Id.* at 24.

The facts of this case are very similar to those of *Lopez*. Like the police officer in *Lopez*, the officer here responded to a call about a sleeping or unconscious motorist. Like the defendant in *Lopez*, Gale had been slumped in a legally parked car for roughly an hour. And, as was the case in *Lopez*, the officer did not articulate other facts, specific to Gale, contributing to the existence of reasonable, articulable suspicion of criminal activity at the time of the seizure. The state contends that *Lopez* is distinguishable because Gale was parked on a city street in the late afternoon, whereas Lopez was parked in a parking lot during the evening hours. But for purposes of the reasonable-suspicion analysis, we see no legal significance to those factual differences. Thus, as in *Lopez*, the facts existing at the time of the seizure did not support a reasonable, articulable suspicion that Gale was engaged in criminal activity.[4]

---

[4] The parties also cite *State v. Deml*, a nonprecedential case, as persuasive authority for their respective positions. No. A06-859, 2007 WL 1674060, at *1 (Minn. App. June 12,

11

The state maintains that reasonable suspicion justifying the seizure exists based on the officer's testimony that slumped motorists may endanger people or property if they become startled upon waking and quickly drive away. We acknowledge this public-safety concern, but we conclude that this generalized statement based on the officer's past experience does not amount to a "particularized and objective basis" for suspecting Gale of being involved in criminal activity at the time she was seized. *See Diede*, 795 N.W.2d at 842-43 (explaining that reasonable suspicion must be "based on specific, articulable facts" that allow the officer "to articulate at the omnibus hearing that he or she had a particularized and objective basis for suspecting the seized person of criminal activity"); *see also Timberlake*, 744 N.W.2d at 393 (stating that, under the reasonable-suspicion standard, the officer must articulate a "particularized and objective basis for suspecting the particular person stopped of criminal activity").

While the reasonable-suspicion standard is not high, "[p]olice must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal

2007). In *Deml*, a police officer saw a pickup truck parked with its engine running in an otherwise empty gas station parking lot around 4:30 a.m. *Id.* at *1. The police officer learned that the truck belonged to a customer who had bought food from the gas station 45 minutes earlier. *Id.* After blocking the truck with his squad car, the officer approached and saw the defendant "slumped over in the driver's seat, with his fingers inside a jar of cheese dip." *Id.* The officer knocked on the window and, after the defendant rolled down the window, observed multiple indicia of intoxication. *Id.* We concluded that the officer lacked reasonable suspicion of illegal activity at the time of the seizure but upheld the seizure based on the emergency-aid exception. *Id.* at *3. Because it is a nonprecedential opinion, we do not rely on *Deml*. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c). But we observe that *Deml* tends to support Gale's argument that no reasonable suspicion of criminal activity existed at the time of the seizure.

activity." *Timberlake*, 744 N.W.2d at 393 (quotations omitted). On this record, we conclude that the officer's identified reasons for seizing Gale fail to prove a particularized and reasonable suspicion that Gale was engaged in criminal activity at the time she was seized. *See Diede*, 795 N.W.2d at 844 (concluding that officer's articulated reasons for seizing the defendant failed to prove an objective basis for suspecting that the defendant was engaged in drug-related criminal activity at the time she was seized). Therefore, the district court erred when it determined that the initial seizure was justified by reasonable, articulable suspicion of criminal activity.

## II. The emergency-aid exception to the warrant requirement justified the seizure under article I, section 10 of the Minnesota Constitution.

Having determined that the officer's seizure of Gale was not justified by reasonable, articulable suspicion of criminal activity, we must next consider whether the seizure was valid under the emergency-aid exception to the warrant requirement.

### A. The emergency-aid exception to the warrant requirement.

The emergency-aid exception "is a subset of the exigent-circumstances exception to the warrant requirement" that applies "in circumstances when police are objectively motivated by the need to render aid or prevent injury." *Ries v. State*, 920 N.W.2d 620, 631 (Minn. 2018). Thus, for purposes of the Fourth Amendment, a warrantless search or seizure may be valid under the emergency-aid exception when (1) police "have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property" and (2) there is "some reasonable basis,

13

approximating probable cause, to associate the emergency with the area or place to be searched." *Id.* at 632 (quoting *State v. Lemieux*, 726 N.W.2d 783, 788 (Minn. 2007)).[5]

Of particular relevance here, the subjective motivation of the officer is irrelevant to the application of the emergency-aid exception under the Fourth Amendment. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (holding that, under the emergency-aid exception to the Fourth Amendment's warrant requirement, "[t]he officer's subjective motivation is irrelevant"); *Ries*, 920 N.W.2d at 632 n.6 (acknowledging *Lemieux*'s reference to "the prior application of an additional prong" requiring that the officer "must not be primarily motivated by the intent to arrest and seize evidence," but recognizing that *Brigham City* rejected that prong for Fourth Amendment purposes); *Lemieux*, 726 N.W.2d at 788 (stating that, under *Brigham City*, an officer's subjective intent is not relevant to the emergency-aid exception under the Fourth Amendment).

In the district court, both parties addressed the applicability of the emergency-aid exception under the two-prong test this court articulated in *Lopez*. That test considered whether "the officer [was] motivated by the need to render aid or assistance" and whether,

---

[5] It makes no doctrinal difference that this case involves a seizure rather than a search. *See Ries*, 920 N.W.2d at 632 ("Under the emergency-aid exception, officers may help an injured person or act to protect life or property if" they have "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property." (quotation omitted)); *State v. Othoudt*, 482 N.W.2d 218, 223 (Minn. 1992) (stating that, "[t]o determine whether the officer's actions meet an objective standard of reasonableness [for purposes of the emergency-aid exception] the court should ask whether with the facts available to the officer at the moment of the *seizure or search*, would a person of reasonable caution believe that the action taken was appropriate" (emphasis added)).

"under the circumstances, . . . a reasonable person [would] believe that an emergency existed." *Lopez*, 698 N.W.2d at 23 (citing *State v. Auman*, 386 N.W.2d 818, 821 (Minn. App. 1986) (stating that the emergency-aid exception applies only where the officer is subjectively and "actually motivated by a perceived need to render aid or assistance" (quotation omitted))). The parties agreed *Lopez*'s second prong was satisfied because a reasonable person would believe that an emergency existed, but they disputed whether, under the first pong, the officer was subjectively motivated by the need to render aid. Applying the *Lopez* framework, the district court found the emergency-aid exception justified the warrantless seizure because the officer was at least partly subjectively motivated to render aid to Gale.

On appeal, the state contends that the parties and the district court erred in applying *Lopez* because subsequent caselaw—namely, *Brigham City*, *Ries*, and *Lemeiux*— eliminated the officer's subjective intent as a consideration for purposes of the emergency-aid exception under the Fourth Amendment. Gale acknowledges this caselaw. And she agrees that, as a matter of federal constitutional law, the officer's subjective motivation is irrelevant and that the emergency-aid exception is satisfied in this case. Instead, Gale argues that we should interpret article I, section 10 of the Minnesota Constitution to provide broader protections than the Fourth Amendment by requiring that an officer possess a subjective intent to render aid for the emergency-aid exception to apply.

Before proceeding with our analysis, we address two preliminary matters. First, we reject the state's argument that Gale forfeited her state constitution claim by not raising this argument to the district court. Gale identified the Minnesota Constitution in her motion

15

to suppress. In her supporting memorandum, she argued that the state had the burden to prove the officer's subjective intent to render aid for the emergency-aid exception to apply—the same argument she raises on appeal. The state similarly framed the emergency-aid exception as requiring proof of the officer's subjective motivation, and the district court made factual findings on the officer's intent. Under these circumstances, we conclude that Gale preserved for appeal the state constitutional law issue of whether the emergency-aid exception requires proof of the officer's subjective intent and, if so, whether the exception justified the warrantless seizure in this case.

Second, we agree with Gale that Minnesota's appellate courts have not squarely decided whether an officer's subjective intent is a relevant consideration when determining the applicability of the emergency-aid exception under the Minnesota Constitution. In *Lemieux*, after recognizing that *Brigham City* rejected consideration of subjective motivation as part of the emergency-aid exception under the federal constitution, the supreme court went on to state that, "assuming that the officers' subjective motivations are a relevant state-law consideration, a warrantless search conducted during a criminal investigation does not necessarily preclude application of the emergency-aid exception so long as one of the motives for the warrantless search corresponds to an objectively reasonable emergency." 726 N.W.2d at 790. *Lemieux* ultimately held that the warrantless entry into the home in that case was justified under the emergency-aid exception in part because "the entry was motivated primarily to look for possible victims." *Id*. Thus, *Lemieux* did not settle the question of whether the Minnesota Constitution provided broader protection by considering an officer's subjective intent under the emergency-aid exception.

16

*See City of Golden Valley v. Wiebesick*, 899 N.W.2d 152, 157 (Minn. 2017) (rejecting the district court's conclusion that the Minnesota Supreme Court had previously determined a state constitutional law question related to individualized suspicion for administrative warrants because the prior decision had "only assumed arguendo that individualized suspicion was required for an administrative search warrant under Article I, Section 10"). Further, *Ries* does not dispose of Gale's state constitutional argument because the supreme court's application of the emergency-aid exception in *Ries* was solely based on the Fourth Amendment. 920 N.W.2d at 622. And in *Lopez*, we cited both federal and state decisions but did not expressly base our emergency-aid analysis on either the Fourth Amendment or the Minnesota Constitution. 698 N.W.2d at 21, 23-24.

Because neither the Minnesota Supreme Court nor this court has decided this issue and its resolution is necessary to Gale's appeal, we now turn to Gale's argument that article I, section 10 of the Minnesota Constitution should be interpreted to require consideration of the officer's subjective intent when analyzing the emergency-aid exception to the warrant requirement.

**B.      Under article I, section 10 of the Minnesota Constitution, an officer's subjective intent is irrelevant to the emergency-aid exception to the warrant requirement.**

Minnesota courts have a responsibility to "safeguard for the people of Minnesota the protections embodied in our constitution." *State v. Askerooth*, 681 N.W.2d 353, 362 (Minn. 2004). As such, "[i]t is axiomatic that [courts] are free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution." *Id. at* 361; *see also State v. Leonard*, 943 N.W.2d

17

149, 156 (Minn. 2020) (recognizing "without a doubt that Article I, Section 10 of the Minnesota Constitution provides greater protection against suspicionless law enforcement conduct than the Fourth Amendment to the United States Constitution"). But in "independently safeguard[ing] for the people of Minnesota the protections embodied in our constitution," courts "will not cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution." *Askerooth*, 681 N.W.2d at 362 (quotation omitted). Instead, there must be "a principled basis" to interpret article I, section 10 as providing greater protections than the federal constitution. *State v. McMurray*, 860 N.W.2d 686, 690 (Minn. 2015) (quotation omitted). "A decision of the U.S. Supreme Court interpreting a provision of the federal constitution that is textually identical to a provision of the Minnesota Constitution is of inherently persuasive, although not necessarily compelling, force." *State v. Wiegand*, 645 N.W.2d 125, 132 (Minn. 2002).

Citing *Askerooth*, Gale argues there is a principled basis to interpret article I, section 10 of the Minnesota Constitution to require consideration of an officer's subjective intent because *Brigham City* marked a sharp departure from "Minnesota's tradition of considering an officer's subjective motivation" in the context of warrantless searches and seizures.[6] In *Askerooth*, the supreme court held that, under the Minnesota Constitution, a warrantless arrest for a traffic violation must be reasonable and supported by individualized suspicion of criminal activity. 681 N.W.2d at 365. The supreme court declined to follow *Atwater v. City of Lago Vista*, a case in which the United States Supreme Court held that

---

[6] Gale does not argue that *Brigham City* marked a sharp departure from United States Supreme Court precedent.

18

"[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.* at 360-61 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). In light of the longstanding interpretation of article I, section 10 relating to traffic stops, the supreme court concluded that *Atwater* was a "sharp departure" from Minnesota's search and seizure jurisprudence. *Id.* at 362.

As support for her proposition that *Brigham City* was a sharp departure from Minnesota's tradition of considering an officer's subjective intent in the context of the emergency-aid exception, Gale relies on the supreme court's decision in *State v. Terrell*. 283 N.W.2d 529 (Minn. 1979). In *Terrell*, the supreme court affirmed the district court's determination that a warrantless entry of a cabin in which a killing had just occurred was justified under the emergency-aid exception. *Id.* at 532. As part of its recitation of the facts adduced at the omnibus hearing, the supreme court stated, "the chief deputy felt that it was possible that the victim, if there was a victim, might still be alive." *Id.*

Viewed in context, we understand *Terrell*'s statement about the chief deputy's beliefs to be a reference to the objective component of the emergency-aid exception, which the supreme court explained authorizes a police officer to make "warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Id.* (quotation omitted). Accordingly, we are unpersuaded by Gale's contention that this sentence from *Terrell* amounts to an adoption of a subjective standard for purposes of the emergency-aid exception under the Minnesota Constitution.

Gale also relies on a handful of nonprecedential opinions from our court, in which Gale contends we have "applied the *Lopez* framework and considered the officers' subjective intent." Nonprecedential opinions of this court are, of course, not binding. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c). Furthermore, of the five nonprecedential opinions Gale cites, only one—*State v. Radermacher*, No. A18-0590, 2018 WL 6441636, (Minn. App. Dec. 10, 2018)—post-dates *Ries*, in which the supreme court clarified, albeit for Fourth Amendment purposes, that an officer's subjective intent is irrelevant. *Ries*, 920 N.W.2d at 632 n.6. While we recited the subjective-intent prong in *Radermacher*, we ultimately rejected application of the emergency-aid exception because, given the circumstances present in the case, "a reasonable person would not have believed that an emergency existed or that [the defendant] was in need of immediate assistance." 2018 WL 6441636, at *4. Thus, *Radermacher* is not persuasive, and we do not consider it to be a sufficiently principled basis on which to interpret article I, section 10 more broadly than the Fourth Amendment.[7]

More generally, Gale appears to argue that *Brigham City* departed from Minnesota's traditional understanding that consideration of an officer's subjective motivation protects

---

[7] We note that, in multiple nonprecedential decisions after *Radermacher*, we have addressed the emergency-aid exception under the objective standard set out in *Ries*, without considering the officer's subjective intent. *See, e.g.*, *State v. Olson*, No. A23-1129, 2024 WL 3025069, at *3 (Minn. App. June 17, 2024), *rev. denied* (Minn. Sept. 25, 2024); *Cadwell v. Comm'r of Pub. Safety*, No. A19-1797, 2020 WL 5107304, at *2 (Minn. App. Aug. 31, 2020); *State v. Peterson*, No. A18-1969, 2019 WL 4409712, at *1 (Minn. App. Sept. 16, 2019); *State v. Gunther*, No. A18-1696, 2019 WL 3000730, at *2 (Minn. App. July 8, 2019); *State v. Shaw*, No. A18-0937, 2019 WL 1591796, at *6 (Minn. App. Apr. 15, 2019).

20

Minnesotans from unreasonable searches and seizures. We do not see such a traditional understanding in Minnesota's search and seizure jurisprudence. *See McMurray*, 860 N.W.2d at 692-93 (declining to interpret the Minnesota Constitution to require greater protection than the Fourth Amendment in the context of a warrantless search of garbage in part because "Minnesota does not have a long tradition of protecting garbage set out for collection from a warrantless search"). In fact, caselaw suggests the opposite. *See, e.g.*, *State v. Koppi*, 798 N.W.2d 358, 363 (Minn. 2011) (stating that the reasonableness of an officer's actions in a probable-cause analysis is "an *objective* inquiry" and the "actual, subjective beliefs of the officer are not the focus in evaluating reasonableness" (quotation omitted)); *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (stating that, when determining the validity of a traffic stop, decisions of the Minnesota Supreme Court "and the United States Supreme Court focus not on the subjective belief of the officer, but rather on the objective basis for the belief that the defendant was engaged in illegal activity").

A recent decision from the Minnesota Supreme Court, *Lorsung v. Commissioner of Public Safety*, provides additional guidance. 30 N.W.3d 777 (Minn. 2026). In *Lorsung*, a license-revocation decision released after the parties filed their briefs in this case, the supreme court held that the totality of the circumstances provided the officer with an objective basis for suspecting that the defendant had driven while impaired. *Id.* at 785. Noting that "it is an open question whether this court must disregard an officer's subjective belief that no crime has occurred," the supreme court discussed the general rationale for rejecting consideration of an officer's subjective beliefs:

> The rationale for excluding evidence of subjective beliefs from the reasonable-suspicion analysis is not because they are irrelevant, but because "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *State v. Britton*, 604 N.W.2d 84, 88 (Minn. 2000) (quoting *Terry*, 392 U.S. at 22, 88 S.Ct. 1868). The objective standard therefore serves as a safeguard by requiring an evidentiary floor, preventing officers from justifying intrusions based on their subjective beliefs or hunches.

*Id.* at 787 n.12.[8] Consistent with this rationale, we conclude that *Brigham City* was not a "sharp departure" from Minnesota precedent and "our traditional understanding of the protections from unreasonable seizure" in the context of the emergency-aid exception. *Askerooth*, 681 N.W.2d at 362. Because there is no principled basis to interpret article I, section 10 of the Minnesota Constitution to afford greater protection than the Fourth Amendment in this area, we hold that an officer's subjective intent is irrelevant for purposes of the emergency-aid exception under the Minnesota Constitution.

**C. Gale's seizure was lawful under the emergency-aid exception to the warrant requirement of article I, section 10 of the Minnesota Constitution.**

Having concluded that the Minnesota Constitution does not require proof of the officer's subjective intent for application of the emergency-aid exception to the warrant requirement, we now consider the constitutionality of Gale's seizure. The emergency-aid exception to the warrant requirement under article I, section 10 of the Minnesota

---

[8] We emphasize that the supreme court's discussion on this point involved whether a court should "disregard an officer's statement *disclaiming* suspicion," which the supreme court observed "remains an open question." *Lorsung*, 30 N.W.2d at 787 n.12. Gale's case does not involve an officer's statement disclaiming suspicion.

22

Constitution allows a police officer to "act to protect life or property" if they have "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property." *Ries*, 920 N.W.2d at 632 (quotation omitted). In the district court, Gale acknowledged that, given the circumstances, a reasonable person would have believed that an emergency existed. And, on appeal, there is no dispute that the officer had a reasonable basis to associate the emergency with Gale, the subject of the warrantless seizure. *See id.* During oral argument, Gale's counsel conceded that, if the officer's subjective motivation is irrelevant, the emergency-aid exception was otherwise established. Therefore, we conclude that the emergency-aid exception justified the officer's initial seizure of Gale.

III. **The police had reasonable, articulable suspicion to expand the scope of Gale's seizure into a DWI investigation.**

Lastly, Gale argues that the officer impermissibly expanded the scope of the seizure to investigate whether she was driving while impaired by asking her to undergo field sobriety testing without reasonable, articulable suspicion of criminal activity.[9] The parties agree, as do we, that the officer expanded the scope of the stop when he asked Gale to undergo field sobriety tests. *See State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (concluding that an officer's reasonable suspicion that a driver was impaired justified expanding the scope of a traffic stop by asking a driver to undergo field sobriety tests).

---

[9] Gale also argues that the officer expanded the scope of the stop by asking her to step out of the car. As Gale's counsel conceded at oral argument, Gale did not challenge this aspect of the police interaction in the district court. We therefore do not consider it. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that appellate courts "generally will not decide issues which were not raised before the district court").

"An initially valid stop may become invalid if it becomes 'intolerable' in its 'intensity or scope.'" *Askerooth*, 681 N.W.2d at 364 (quoting *Terry*, 392 U.S. at 17-18). Accordingly, under the Minnesota Constitution, each incremental intrusion must "be tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*." *Id.* at 365; *see also State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012) (stating that an expansion of the scope of a stop "not strictly tied to the circumstances that rendered the initiation of the stop permissible must be supported by at least a reasonable suspicion of additional illegal activity").

The district court determined there was reasonable, articulable suspicion to expand the scope of the seizure into a DWI investigation based on the circumstances of the slumped-motorist call, the officer's training and experience on "bounce back" effects of drug use, and Gale's slow physical and verbal responses. We agree.

In his testimony, the officer explained the factors that caused him to expand the seizure into a drug investigation by asking Gale to undergo field sobriety testing. Gale had been slumped, with her head leaning back, for more than an hour in a running car parked on a busy Minneapolis street. In the officer's experience, a slumped motorist is either asleep or impaired. Once Gale was awake, the officer observed indicia of impairment, including that she was slow to respond, and he had to "tell her things multiple times." The officer, who had training and experience with drug and narcotics investigations, testified that a person under the influence of a narcotic analgesic such as fentanyl may exhibit drowsiness, sluggishness, grayish skin, a raspy voice, and be slow to respond. A "bounce

24

back" effect may occur after the high of ingesting a stimulant has worn off, which causes a person to experience low motor function and exhaustion. We conclude that, under the totality of the circumstances, these facts amount to reasonable, articulable suspicion permitting the officer to expand the seizure to investigate whether Gale was driving while impaired.

Gale asserts that the officer's body-worn camera footage shows she was not moving slowly and did not exhibit other indicia of impairment. But the district court found the officer's testimony that Gale was slow to respond and required repeated instructions credible, and that the testimony was corroborated by the body-worn camera footage. We defer to the district court's credibility determination and its characterization of the body-worn camera footage. *Constans v. Comm'r of Pub. Safety*, 835 N.W.2d 518, 523 (Minn. App. 2013). Further, we have reviewed the body-worn camera evidence and we are not convinced that the district court's factual finding is clearly erroneous. *See State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012) (stating that a factual finding "is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred").

Establishing reasonable suspicion is a "low hurdle." *Taylor*, 965 N.W.2d at 757. Considering the totality of the circumstances, we conclude that the officer identified "sufficient articulable facts, and inferences that could be drawn from those facts, to establish a reasonable, articulable suspicion" that Gale was operating a vehicle while impaired. *See id.* at 758. Therefore, the district court did not err in determining that the

officer had reasonable, articulable suspicion sufficient to expand the scope of the stop into a DWI investigation by asking Gale to undergo field sobriety tests.

## DECISION

The officer lacked reasonable, articulable suspicion of criminal activity to justify the seizure at its inception. When determining the applicability of the emergency-aid exception to the warrant requirement of article I, section 10 of the Minnesota Constitution, an officer's subjective intent is irrelevant. Because the circumstances of the slumped-motorist call provided the officer with an objectively reasonable basis to believe that there was an emergency requiring immediate law-enforcement assistance, the emergency-aid exception to the warrant requirement justified the seizure under the Minnesota Constitution. And because the state established that the officer had a reasonable, articulable suspicion that Gale was operating a vehicle while impaired, the officer's expansion of the scope of the stop into a DWI investigation was lawful. Therefore, the district court did not err in denying Gale's motion to suppress the evidence.

**Affirmed.**